SARAH JOAN WATSON, Plaintiff v. BOBBY DIXON and DUKE UNIVERSITY, Defendants

No. COA97-638

(Filed 16 February 1999)

**Damages and Remedies— punitive damages—necessary aggravating factor**

The necessary aggravating factor was present to support an instruction on the issue of punitive damages in an action arising from workplace harassment and the trial court properly denied defendants' motions for judgment nov, a new trial, or remittitur where plaintiff offered plenary evidence to establish a prima facie claim of intentional infliction of emotional distress, one of the

elements of such a claim being extreme and outrageous conduct by defendant or a third party which is then imputed to defendant. Moreover, it would seem that Duke's liability was based on more than mere ratification and it cannot be said as a matter of law that the punitive damage awards against defendant Dixon for $5,000 and against defendant Duke for $500,000 were an abuse of discretion where it was uncontroverted that Duke has a net worth of millions while its employee, Dixon, is virtually judgment proof.

Judge McGEE concurring in part and dissenting in part.

Defendants appealed from an order entered 15 November 1996 by Judge A. Leon Stanback, Jr. in Durham County Superior Court. This appeal was heard in this Court on 15 January 1998, and the opinion was filed on 7 July 1998. Plaintiff and defendants petitioned for rehearing. Both petitions were granted by order of this Court entered 9 September 1998, and the matter was heard on the petitions to rehear without additional briefs or oral argument.

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher and William S. Mills, for plaintiff-appellee.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Guy F. Driver, Jr. and Barbara R. Lentz, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Only the facts necessary for determination of the issue on rehearing are set out here. For a more complete statement of the facts of this case, see this Court's previous opinion at 130 N.C. App. 47, 502 S.E.2d 15. Plaintiff Sarah Joan Watson initiated this action against defendants Bobby Dixon (Dixon) and Duke University (Duke) on 22 October 1992, alleging claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, negligent retention and assault. By order dated 18 July 1995, plaintiff's claims against Duke for assault, negligent infliction of emotional distress, and negligent hiring, as well as plaintiff's claim against Dixon for negligent infliction of emotional distress, were dismissed. Plaintiff's remaining claims against Duke for intentional infliction of emotional distress and negligent retention, and against Dixon for assault and intentional infliction of emotional distress, were tried before Judge A. Leon Stanback, Jr. and a duly empaneled jury during the 23 September 1996 civil session of Durham County Superior Court.

By verdict returned on 10 October 1996, the jury determined that Dixon was not liable for an assault on Watson, and that Duke was not liable for the negligent retention of Dixon. The jury did find, however, (1) that Dixon was liable for the battery of Watson and awarded her $100 in compensatory damages; and (2) that Dixon was liable for intentional infliction of emotional distress and that Duke had ratified Dixon's actions in inflicting this emotional distress, and awarded Watson compensatory damages in the amount of $100,000, and punitive damages in the amount of $5,000 from Dixon and $500,000 from Duke. Judge Stanback entered judgment on the jury's verdict on 21 October 1996.

Thereafter, defendants made oral motions for judgment notwithstanding the verdict (j.n.o.v.) or, in the alternative, for a new trial, which were summarily denied. On 28 October 1996, defendant filed written motions for j.n.o.v. or, in the alternative, for a new trial, or in the alternative, for a remittitur as to damages. These motions were heard on 7 November 1996, and by order entered 15 November 1996, Judge Stanback denied defendants' motions. Defendants appealed.

In this Court's decision filed 7 July 1998, we affirmed that part of the trial court's judgment on plaintiff's claims against Dixon for intentional infliction of emotional distress and against Duke for ratification. However, we reversed and remanded for determination of the amount of punitive damages to be awarded against Dixon and Duke. Plaintiff and defendants petitioned for rehearing, and by orders entered 9 September 1998, we allowed these petitions, without additional briefing or oral argument, for the limited purpose of addressing the propriety of the punitive damage awards against Dixon and Duke. In all other respects, the original opinion of this Court filed 7 July 1998 is adopted and reaffirmed.

On rehearing, plaintiff contends that defendants are not entitled to reversal of the punitive damage awards against Dixon and Duke since defendants invited error in the trial court by joining in plaintiff's request that a separate punitive damage issue be submitted to the jury as to each defendant. Defendants contend that a retrial on the sole issue of punitive damages would violate the United States and North Carolina Constitutions and existing North Carolina case law. Indeed, defendants argue that precedent compels this Court to limit the award against Duke.

We are well aware of the recent change in North Carolina's Punitive Damages Statute, Chapter 1D of our General Statues, which

requires that "[t]he same trier of fact that tried the issues relating to compensatory damages shall try the issues relating to punitive damages." N.C. Gen. Stat. § 1D-30 (1997). We note, however, that this provision of section 1D-30 does not govern the instant case, as this case originated prior to the enactment of the subject restriction on the trial of compensatory and punitive damages. We are also aware of the line of cases wherein it has been held that "when an employer's liability is solely derivative under a theory of vicarious liability, such as respondeat superior or ratification, the liability of the employer cannot exceed the liability of the employee." *Poole v. Copland, Inc.*, 125 N.C. App. 235, 246, 481 S.E.2d 88, 95 (1997), *rev'd on other grounds*, 348 N.C. 260, 498 S.E.2d 602 (1998); *see also Thompson v. Lassiter*, 246 N.C. 34, 38, 97 S.E.2d 492, 496 (1957); *Pinnix v. Griffin*, 221 N.C. 348, 351, 20 S.E.2d 366, 369 (1942). However, we do not believe that this precedent is prohibitive of the award of punitive damages in the present case—$5,000 against Bobby Dixon and $500,000 against Duke.

This matter originally came before us on appeal from an order of the trial court denying their motion for j.n.o.v or, in the alternative, for a new trial, or in the alternative, for a remittitur as to damages. A motion for judgment notwithstanding the verdict is properly denied where the court finds more than a scintilla of evidence to support each element of the non-moving party's case. *Lyon v. May*, 119 N.C. App. 704, 707, 459 S.E.2d 833, 836 (1995). Moreover, it is well settled that a motion for a new trial is granted in the sole discretion of the trial court. *Edwards v. Hardy*, 126 N.C. App. 69, 71, 483 S.E.2d 724, 726 (1997). Finally, the trial court is vested with the discretion to reduce the verdict on its own motion so long as the party in whose favor it was rendered does not object. *Redevelopment Comm. v. Holman*, 30 N.C. App. 395, 397, 226 S.E.2d 848, 849 (1976). This Court has previously held, "[a] discretionary ruling by the trial judge should not be disturbed on appeal unless the appellate court is convinced by the cold record that the ruling probably amounted to a substantial miscarriage of justice." *Boyd v. L. G. DeWitt Trucking Co.*, 103 N.C. App. 396, 406, 405 S.E.2d 914, 921 (1991). After a thorough examination of all of the parties' contentions and North Carolina case law, we hold that there was sufficient evidence to support the punitive damages awarded against Dixon and Duke, and therefore, wholly affirm that award.

"[P]unitive damages are awarded above and beyond actual damages and intended to punish[.]" *Maintenance Equipment Co. v. Godley Builders*, 107 N.C. App. 343, 354, 420 S.E.2d 199, 205 (1992).

Accordingly, "the jury is allowed to consider the circumstances of defendants' conduct and financial position when setting the [amount of a punitive damage] award." *Id.* It is well settled that the determination of whether punitive damages should be awarded, and the amount of the award rests within the sound discretion of the jury. *Stone v. Martin*, 85 N.C. App. 410, 419, 355 S.E.2d 255, 260 (1987). Hence, many punitive damage awards have been upheld although they were significantly disproportionate to the award of compensatory damages. *See Maintenance Equipment Co.*, 107 N.C. App. at 354, 420 S.E.2d at 205.

The evidence tends to show that plaintiff and Dixon were both employed with Duke in the Sterile Processing of the Medical Center, when Watson began to experience difficulty with Dixon's harassing behavior. Dixon's behavior consisted of crank telephone calls, rubbing his body against Watson, touching her breasts, confining Watson to a room against her will, drawing a picture of Watson depicting her with a penis, making obscene comments about her, scaring Watson in an area where rapes had occurred, and making scary comments about her long drive home on dark roadways. This conduct continued for about seven or eight months (from approximately August 1991 to late March 1992), during which plaintiff experienced bouts of crying, vomiting, and inability to sleep, until finally she suffered a nervous breakdown. As a result, plaintiff has been diagnosed with depression and post-traumatic stress disorder.

Dixon had a reputation amongst the Sterile Department management as one who joked and played around a lot, and intimidated new employees. However, Duke had never taken any serious disciplinary action to address this problem. When Dixon began to harass plaintiff, she reported his behavior to her supervisor, Eunice Haskins Turrentine, the Assistant Director of Sterile Processing, Vickie Barnette, Employee Relations Representative, Oscar Rouse, and Duke Police Officer Sarah Minnis. However, little if anything was done about Dixon's harassing behavior until around 20 March 1992, when Bill Dennis, Director of Material Management, spoke with Dixon about his reported behavior, and separated plaintiff and Dixon in the work environment. Plaintiff was thereafter transferred to first shift, a low stress position, but after less than a week in her new position, plaintiff went out of work on leave and did not return to work until 1 June 1992, and worked part-time until mid-July 1992, when she returned to work full-time. Plaintiff and Dixon both were still employed with Duke at the time of trial.

During defendants' case in chief, Dixon contended that he had not intentionally harassed Watson, and Duke maintained that the university had responded as best it could in light of the circumstances. Many of Duke's personnel deny receiving reports of Dixon's behavior, or testified that Watson told them that she wanted to keep her complaints confidential.

We held in our 7 July 1998 opinion and reaffirm now that plaintiff offered plenary evidence to establish a *prima facie* claim of intentional infliction of emotional distress, one of the constituent elements of such a claim being "extreme and outrageous" conduct by defendant or a third party which is then imputed to defendant. Accordingly, the necessary aggravating factor was present to support an instruction on the issue of punitive damages to the jury. *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 438, 378 S.E.2d 232, 236-37 (1989).

In the instant case, we must note that the jury drafted a rather terse letter to Duke denouncing its indifference to plaintiff's plight and suggesting that they abide by those policies that were in place to address workplace harassment. Although the jury did exonerate Duke of negligent retention, in its letter, the jury specifically remarked upon Duke's somewhat reckless indifference to plaintiff's complaints and the policies the university had in place for addressing such complaints. It would seem then that Duke's liability in this instance is based upon more than mere ratification. Moreover, it is uncontroverted that Duke has a net worth of millions, while its employee, Bobby Dixon, is virtually judgment proof. It would take a far greater punitive damage award to punish a thriving entity, than one of its lower echelon employees. In light of the egregious nature of Duke's behavior and its superior financial status, we cannot say that as a matter of law the punitive damage awards against Dixon for $5,000 and Duke for $500,000 was an abuse of discretion. Because there was more than a scintilla of evidence to support the punitive damage awards against Duke and Dixon and the "cold record" in this case does not show that the trial court's ruling "probably amounted to a substantial miscarriage of justice," *Boyd*, 103 N.C. App. at 406, 405 S.E.2d at 921, that ruling is affirmed.

Affirmed.

Judges LEWIS and McGEE concur.

Judge McGEE concurring in part and dissenting in part.

I agree with the majority opinion that there is direct evidence to support punitive damages against both Bobby Dixon and Duke University. However, I respectfully dissent from the majority opinion affirming a punitive damage award against Duke in the amount of $500,000 when the jury itself found Duke not liable for negligent retention of its employee Bobby Dixon but liable only for ratification of the actions of its employee. As we stated in our prior opinion, it is well settled that the liability of the employer under a theory of vicarious liability, such as *respondeat superior* or ratification, cannot be in excess of that of the employee. See *Pinnix v. Griffin*, 221 N.C. 348, 20 S.E.2d 366 (1942); *Thompson v. Lassiter*, 246 N.C. 34, 97 S.E.2d 492 (1957); *Poole v. Copland, Inc.*, 125 N.C. App. 235, 481 S.E.2d 88 (1997), *rev'd and remanded on other grounds*, 348 N.C. 260, 498 S.E.2d 602 (1998). The jury set the punitive damages award against Dixon at $5,000 and present case law of our Courts limits Duke's liability to an equal amount.